Laney v. Ricardo, 169 Wis. 267.

---

Laney, Respondent, vs. Ricardo and another, Appellants.

*April 5—April 29, 1919.*

*Vendor and purchaser: Making of contract: Meeting of minds: Option: Ratification of new terms: Rejection of contract: Trial: Recital of evidence in findings of fact.*

1. Findings of fact should not be a recital of the evidence or a history of the litigation, but should cover only the ultimate issues raised.
2. The minds of the parties to a contract must meet upon the essential contents thereof.
3. Where the purchaser of land wired acceptance of an offer by the vendor's agent of an option for a certain period at a certain price, but sent a written contract providing that the amount paid for the option be deducted from the purchase price and warranting the agent's authority to give the option— terms which the vendor's agent had not agreed to,—there was no contract, the minds of the parties not having met upon essential terms.

4. The vendor's agent, by notifying another agent having the property listed that he had granted the option, did not assent to new terms, where he had not received the contract stating such terms when notice was given.

5. The vendor's failure to notify the purchaser of the rejection of the contract because it contained terms not agreed to, was no ratification of the contract, where the bank to which it was sent was told of the refusal to sign and of the nonacceptance of the contract.

6. The vendor's agent did not ratify the option sent by the purchaser for signature but containing terms to which the agent had not agreed, by writing another agent having the land listed that the deal was apparently going through or by writing the purchaser's agent that he was getting the option "altered a little bit," for at such time the vendor's agent, in view of the purchaser's telegram accepting his offer, thought the vendor would consent to eliminating objections so as to make the contract correspond with his offer.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Reversed.*

Action to recover damages for breach of an alleged contract to sell certain lots in the city of Superior. One F. B. Pemberton of Victoria, British Columbia, acted as agent for the defendants, and it is admitted that he had authority from them to give an option for the sale of the lots. August 8, 1916, he wrote one A. R. Cann of Superior asking if he could assist in the sale of the lots so as to net *Ricardo* $1,500 for his equity. August 24th Cann replies that he thinks he can and asks for an exclusive sale. September 8th Pemberton writes that one E. A. Arnold has the sale of them also. January 1, 1917, Cann wires Pemberton, "Have accepted, subject to your approval fifty dollars option money on Ricardo Belknap lots sale price to be on basis of fifteen hundred dollars for his equity as per your letter of August 8th said option to be for a period of ninety days." January 2d Pemberton wrote Cann, "It is hardly fair to expect us to give as long an option as ninety days, but we do not mind giving sixty days' option for the $50 if you think sale likely to go

through." He also wired on the same date, "Will give option sixty days not ninety terms your lettergram." In reply Cann the same day wired, "Will give seventy-five dollars option ninety days," to which Pemberton the same day replied by wire, "Will give option ninety days one hundred dollars." January 5, 1917, Cann wired Pemberton, "Have accepted one hundred dollars as option money on Ricardo Belknap lots as per your telegram we to pay fifteen hundred dollars for equity in lots am forwarding option for signature with draft for one hundred dollars to Canadian Bank of Commerce." This message was received by Pemberton January 6th. The written form of option naming plaintiff as purchaser was sent to the bank with instructions to deliver the draft for $100 to Pemberton upon his signing the option. Among other things the written option provided that the $100 paid for the option should be deducted from the purchase price of $1,500 for the equity, and it warranted that Pemberton had the right to give the option. When the option was presented to Pemberton on January 15th or 16th for signature he refused to sign it, and requested the bank to hold it and the draft till *Laney* could be heard from. The bank held both till February 19, 1917, when upon plaintiff's request it returned them. January 9, 1917, in reply to an offer from E. A. Arnold, Pemberton wrote Arnold, "Unfortunately I have accepted an offer to bond the property for three months. In case anything falls through with regard to this, I will at once let you know," and on January 18, 1917, he again wrote Arnold, "Apparently the deal with Mr. Cann is going through so we will not be able to avail ourselves of your offer." On the 19th Pemberton is advised by *Laney* that Arnold has recorded a deed on the lots in question executed by defendants to Belmont Company as grantee. This turns out to be an old deed in the possession of Arnold which it was expected might be used in a former deal that had fallen through. Arnold changed the dates in the deed

and recorded it without any authority on the part of the defendants or of Pemberton.    The deed was afterwards set aside in an action brought for that purpose.    On January 20, 1917, Pemberton writes *Laney,* among other things, the following: "I received the option from the bank and was getting it altered a little bit and would have sent it off today." Letters and telegrams of inquiry and explanation follow between Pemberton and *Laney.*    The latter insists that the deal be closed as per written option sent, and he forwards deeds for that purpose.    Pemberton refused to deal with *Laney,* and about the 1st of February, 1917, accepted an offer from Arnold and the lots were conveyed to Arnold's client.    A jury having been waived, the trial court found that Pemberton had entered into a valid contract to sell as per written option forwarded to the bank, and assessed plaintiff's damages in the sum of $4,791.37, with interest and costs.    From a judgment entered accordingly the defendants appealed.

For the appellants there was a brief by *Luse, Powell & Luse* of Superior, and oral argument by *C. Z. Luse* and *L. K. Luse.*

For the respondent there was a brief by *Hanitch & Hartley* of Superior, and oral argument by *Louis Hanitch* and *Clarence J. Hartley.*

VINJE, J.    The defendants contend (a) that the negotiations did not ripen into a contract; (b) that no note or memorandum signed by their agent was ever made to satisfy the statute of frauds; (c) that plaintiff, owing to his relations to Cann, is in no position to claim any benefit under a contract with the defendants; and (d) error in assessing damages.

The trial court made sixty-four so-called findings of fact covering forty-four printed pages.    The first fifty-five findings are mere recitals of evidence, and most of the balance

except finding 58, finding that a contract was made, and finding 63, covering plaintiff's damages, are a mixture of recitals of evidence, arguments, and conclusions.    Only two issues arose, namely: first, did the parties make a contract, and, if so, what were its terms; and second, if a contract was made what were plaintiff's damages.    The breach was admitted.

This court has so frequently reminded trial judges that findings of fact should not be a recital of the evidence in the case, or a history of the litigation, but should cover only the ultimate issues raised by the evidence, that further advertence thereto seems superfluous.    But the present case is so flagrant a violation of the rule that we cannot forbear to again admonish trial judges against like or similar infractions thereof.

The substance of all the correspondence between *Laney* and Pemberton and Cann and Pemberton up to the latter's refusal to sign the written option, which was first presented to him by the bank either January 15th or 16th, is set out in the statement of facts.    From such correspondence and the testimony in the case three things clearly affirmatively appear: first, plaintiff was to pay $100 for an option for ninety days; second, he was to pay *Ricardo* $1,500 for his equity if he exercised his option within that time; and third, it was contemplated by plaintiff and Cann that a written option was to be signed by Pemberton.    It also negatively appears that there was no thought on the part of Pemberton that he should "warrant that he has a good right and authority for this option," which clause was contained in the draft sent and which he refused to sign partly for that reason.

It is a familiar principle in the law of contracts that the minds of the parties thereto must meet upon the essential contents of the contract.    Here they never so met.    Pemberton never agreed to sell for $1,500 less the $100 paid for the option.    His offer was to sell for $1,500 plus the $100 paid for the option.    This offer plaintiff never accepted.

And while the parties stipulated upon the trial that Pemberton had authority to give the option, he did not offer to warrant that he had authority, and from the evidence it appears he was unwilling to give such warranty. The fact that he wrote Arnold under date of January 9th that he had bonded the property for three months does not show an assent to the option sent him, for that was not seen by him till January 16th or 17th. At the time he made that statement he no doubt relied upon the truth of Cann's telegram of January 5th that he had accepted $100 as option money on terms stated. Pemberton had a right to assume that the written option to be sent would embody the essential terms of the offer made, and not make counter terms as it did. That plaintiff and Cann understood that Pemberton alone had the right to give an option appears in all the correspondence and is made clear by the wire of January 5th where it stated option is forwarded for signature.

The trial court also inferentially finds that Pemberton, by not making specific and prompt objections to the option sent, ratified it. This view is untenable, because he distinctly told the bank he could not sign or use the form of option sent when it was first presented to him. The bank was plaintiff's agent and it was its duty to inform him of Pemberton's refusal to sign.

Nor is it strange that Pemberton should have written Arnold on the 18th day of January, a day or two after the option was first presented to him, that "apparently the deal with Mr. Cann is going through," for he then no doubt thought that plaintiff would consent to eliminate the objectionable features of the option and make it correspond to the offer made. So, also, his expression in his letter to *Laney* that he was getting the option "altered a little bit" and would have it sent off today, January 20th, does not show a ratification of the option sent. On the contrary it shows disapproval or he would not have altered it a little bit. He

must have deemed the alterations of some importance or he would not have made them, but would have signed the option as sent.    This letter was written the day after plaintiff informed Pemberton of the record of a deed by Arnold. From there on everything was held in abeyance awaiting an explanation.    Owing to the distance the parties lived apart and the difficulty Pemberton encountered in getting definite information, it is not strange that almost another month should elapse before he told plaintiff definitely that the deal was off.

Counsel for defendants call attention to a number of matters in which the written option differed from Pemberton's offer in addition to the amount of the purchase price and Pemberton's warrant of power, but we prefer to base our decision upon the fact alone that Pemberton was under no obligation to accept $100 less for the equity in the property than he offered it for, and that the counter proposition to pay only $1,400 for such equity was never accepted or ratified by him.    It follows that the trial court erred in finding that a valid contract for the sale of the property had been entered into by the parties either expressly or by ratification.    The result reached upon this point renders it needless to discuss defendants' other assignments of error.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for defendants dismissing the action upon the merits.